IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| PNC EQUIPMENT FINANCE, LLC, § § | |
| Plaintiff, § § | |
| v. § | Civil Action No. 3:13-CV-2028-N |
| § | |
| DONAL R. SCHMIDT, *et al.*, § § | |
| Defendants. § | |

## ORDER

This Order addresses Plaintiff PNC Equipment Finance, LLC's ("PNC") motion for summary judgment [Doc. 25] and Defendants Donal R. Schmidt and Penny L. Schmidt's motions to strike the declaration of David Chambers [34, 35]. For the following reasons, the Court denies Defendants' motions to strike and grants summary judgment as to PNC's breach of contract claim.

### I. THE NOTE

On February 3, 2009, S & W Aircraft Leasing, LLC ("S & W") executed a promissory note payable to PNC, as successor-in-interest to National City Commercial Capital Company, LLC, in the amount of $2,100,000.00 (the "Loan"). At that time, Plaintiffs Donal R. Schmidt, Penny L. Schmidt, Melissa J. Wafford, and Thimothy S. Wafford guaranteed payment of the Note (the "Guaranty Agreements"). S & W declared bankruptcy (the "Bankruptcy Action") and sold the collateral to pay the Loan. After applying the sales proceeds to the Loan, the outstanding balance is $338,840.41, including interest as of

September 2013. Defendants have not made any payments pursuant to the Loan. PNC sued Defendants on May 30, 2013, for breach of the Guaranty Agreements. PNC now moves for summary judgment.

## II. THE COURT DENIES THE MOTION TO STRIKE

Declarations are proper summary judgment evidence under Rule 56(c). *See* FED. R. CIV. P. 56(c). Courts may take into consideration the information contained in declarations to the extent that such information complies with the requirements of Rule 56(c)(4), which requires that the declaration (1) be made on personal knowledge; (2) set out facts that would be admissible in evidence; and (3) show that the declarant is competent to testify on the matters stated. *See* 10B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2738, at 335 (3d ed. 1998); *see also* FED. R. CIV. P. 56(c)(4). Courts may also consider exhibits whether or not they are attached to the declaration. *See* FED. R. CIV. P. 56(c)(1)(A) & 2010 Advisory Committee Notes (discussing Rule 56(c)(1)(A), (c)(4)).

PNC submits the Declaration of David Chambers (the "Chambers Declaration"), an agent of PNC, to support its summary judgment motion. *See* Chambers Declaration [25-2]. Defendants argue that the Chambers Declaration should be stricken because he had no personal knowledge of the loan and his statements are conclusory. *See* Def. Donal Schmidt's Resp. 3–4 [34]. In particular, Defendants take issue with Chambers's statement that "[n]o representative of PNC . . . has ever made any statement or omission or undertaken any action or inaction directed at the Defendants that would reasonably lead the Defendants to believe

that PNC would forgive or reduce any amount of indebtedness due and owning under the Note." *Id.* 3 (citing Chambers Declaration ¶ 19). Defendants argue that Chambers could not have personal knowledge of the actions of other employees at PNC and that his statements regarding conversations with third parties are inadmissible hearsay. *Id.* 3–4.

Contrary to PNC's assertions, the Chambers Declaration establishes an adequate basis for his knowledge. For example, Chambers attests that he is the PNC employee responsible for servicing and collecting the Loan, that he is the custodian of records for the Loan, and that he has reviewed the records. *See* Chambers Declaration ¶¶ 2–4. Chambers states that it is PNC policy for an employee to make a record based on his personal knowledge at or near the time of an event or transaction. *Id.* ¶ 3. Thus, Chambers provides a basis for his claim – his review of the records – that no PNC employee made certain representations to Defendants. *Id.* ¶ 19. Because Chambers explains the underlying facts upon which his assertions are based, his statements are not conclusory. BLACK'S LAW DICTIONARY 329 (9th ed. 2009) (defining "conclusory" as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based").

To the extent Defendants argue that Chambers Declaration contains inadmissible hearsay, the Court finds that Chambers's statements are within the business records exception. Under Federal Rule of Evidence 803(6), a record is not excluded as hearsay if:

> (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

    (C) making the record was a regular practice of that activity;

    (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

    (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). Chambers has set forth facts to support each of these elements. *See* Chambers Declaration ¶¶ 2–4. The Court therefore denies Defendants' motion to strike the Chambers Declaration.

### III. THE COURT GRANTS SUMMARY JUDGMENT

#### *A. Standard for Summary Judgment*

A trial court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, a court must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted).

When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "conclusory allegations, speculation, and unsubstantiated assertions" will not satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). Indeed, factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### B. PNC Has Proved its Breach of Contract Claim

To recover under the Guaranty Agreements, PNC must prove "(1) the existence and ownership of the guaranty contract, (2) the terms of the underlying contract by the holder, (3) the occurrence of the conditions upon which liability is based, and (4) the failure or refusal to perform the promise by the guarantor." *Haggard v. Bank of Ozarks Inc.*, 668 F.3d

196, 199 (5th Cir. 2012) (quoting *Marshall v. Ford Motor Co.*, 878 S.W.2d 629, 631 (Tex. App. – Dallas 1994, no writ)). Defendants do not dispute that they are liable on the Loan but argue that there are three material issues of fact as to the amount owed. First, Defendants claim they have never received an accounting of the Loan and cannot determine whether the requested amount is correct. *See* Def. Donal Schmidt's Resp. 5–6. Second, Defendants argue that PNC cannot accrue any interest due to the bankruptcy proceeding. *Id.* at 6. And, third, Defendants contend that PNC agreed it would apply a property tax credit of $28,914.65 to the debt, which would reduce the amount Defendants owe. *Id.* at 6–7.

None of these arguments is availing. Defendants have received information regarding the calculation of the balance of the Note from PNC on several occasions. For example, PNC filed a proof of claim in the Bankruptcy Action, which listed the outstanding principal balance on the Note as $328,928.90. *See* Pl.'s Reply in Supp. of Mot. Summ. J., App. 14 [37]. The proof of claim sets out the calculation of the amount, including the calculation for interest, and states that it includes interest at the default rate of LIBOR plus 7.50 percent per annum. *Id.* at 12–15. As of September 13, 2013, the outstanding balance with interest and fees is $338,840.41. *See* Pl.'s Mot. Summ. J., App. 5 [25-2]. PNC also provided Penny Schmidt with an accounting of the Loan via email in January 2013. *See* Pl.'s Reply in Supp. of Mot. Summ. J., App. 1–7. Other than claiming that PNC has not provided this information, Defendants offer no evidence indicating that the amount is inaccurate.

Second, Defendants rely on 11 U.S.C. § 506(b) for their argument that PNC cannot accrue interest on the Loan because PNC sold the collateral for less than the amount of the

ORDER – PAGE 6

Loan. *See* Def. Donal Schmidt's Resp. 6. Though section 506(b) effectively prohibits an undersecured creditor from charging interest against a debtor, *see United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 382 (1988), it does not apply to non-debtor guarantors. Rather, "the scope of a guarantor's liability depends on the terms of the guarantee. . . . [A] guarantor who unconditionally guarantees an indebtedness may be obliged to satisfy the debt in full even if the obligation of the principal is impaired in bankruptcy proceedings. Thus, the [guarantors'] obligation may be unaffected by the application of 11 U.S.C. §§ 502(b)(2), 506(b). . . ." *In re Diaconx Corp.*, 69 B.R. 333, 342-43 (Bankr. E.D. Pa. 1987) (internal citations omitted); *cf. United States v. Stribling Flying Serv., Inc.*, 734 F.2d 221, 223 (5th Cir. 1984) (holding that the obligation of the unconditional guarantors of the loan was not affected by the bankruptcy proceedings of the debtor). Each of the Guaranty Agreements states that Defendants unconditionally guarantees the debt. *See* Pl.'s Mot. Summ. J., App. 76–78, 84–86, 92–94, 100–02. Therefore, Section 506(b) does not shield Defendants from interest charges on the Loan.

Finally, Defendants argue that, because PNC has not specifically stated whether it has applied a property tax credit of $28,914.65 to the Loan balance, a fact issue exists. *See* Def. Donal Schmidt's Resp. 6–7. The Bankruptcy Court's Agreed Order approving the sale of the collateral states:

> Dallas County shall receive no less than $58,751.55 from the sale proceeds at closing in satisfaction of its tax liens in the [collateral]. Of this amount, Dallas County shall receive $29,809.90 in full satisfaction of the 2012 taxes. The remaining $28,941.65 will be applied to year 2013 ad valorem business personal property taxes and is subject to a final determination of the 2013 tax

>> liability . . . . If the ultimate 2013 tax liability is less than $28,941.65, such refundable amount, if any, shall be reimbursed to:
>
>> > i. PNC and shall be applied against any deficiency claim PNC may have against the Debtor under PNC's pre-petition loan documents at the time such reimbursement is made; or
>
>> > ii. The Debtor if PNC's deficiency claim has been fully satisfied at the time such reimbursement is available.

Pl.'s Mot. Summ. J., App. 132–33. PNC states that it has not yet received a reimbursement of the excess taxes and thus has not applied the amount to the Loan. *See* Pl.'s Reply 14. Further, the agreement permits PNC to collect on the Loan before it has received the excess taxes, if any, and reimburse Defendants later. Thus, there is no fact issue as to the property tax credit.

The Court holds that Defendants have not raised a genuine issue of material fact as to the calculation of the amount due under the Note.

### C. *Defendants' Affirmative Defenses Lack Merit*

Defendants also fail to raise an issue of fact as to their affirmative defenses. Defendants argue that PNC cannot recover under the Loan because they waived their claim and/or are estopped from pursuing it due to representations made to Defendants.[1] To succeed on either affirmative defense, Defendants must show that PNC engaged in some conduct that would lead Defendants to believe that PNC did not intend to pursue its claims on the Loan. *See Tenneco Inc. v. Enter. Products Co.*, 925 S.W.2d 640, 643 (Tex. 1996) ("The affirmative

---

[1] Defendants asserted two additional affirmative defenses in their answer – failure to mitigate damages and payment – which they did not pursue in their response brief. As they have presented no evidence to support these claims, the Court finds them waived.

defense of waiver can be asserted against a party who intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right."); *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515–16 (Tex. 1998) ("[T]he doctrine of equitable estoppel requires: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations.").[2]  Defendants bear the burden of proof on both affirmative defenses.  *Looney v. Irvine Sensors Corp.*, 2010 WL 532431, *4–5 (N.D. Tex. 2010).

In his declaration, Defendant Donal R. Schmidt, Jr., states that he discussed with PNC officers (1) "how the value of the jet and the sale would affect or result in a deficiency and how that could or might be resolved"; (2) a possible short sale; (3) offers to purchase the collateral; (4) set offs; (5) "damages from waiver for PNC's objection to the [sale of the collateral]"; and (6) that PNC believed its attorneys were not conveying Defendants' offers to them.  *See* Def. Donal Schmidt's Resp., App. 2 [27-1].  At most, these statements reflect ongoing negotiations regarding PNC's plan to sell the collateral.  None supports Defendants' contention that PNC gave up its rights to pursue its claim on the remaining portion of the Loan after the sale.  As Defendants have failed to produce any evidence to support their

---

[2] Defendants do not specify whether they intended to assert equitable estoppel or promissory estoppel.  Under either theory, Defendants would need to show that PNC made a representation to the Defendants, which the Defendants relied on to their detriment.  *See English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983) (listing elements of promissory estoppel).

affirmative defenses, the Court finds that PNC is entitled to summary judgment on Defendants' affirmative defenses.[3]

### D. The Court Cannot Presently Grant Attorneys' Fees

State law governs whether a contractual provision for attorneys' fees is valid. *Specialty Healthcare Mgmt., Inc. v. St. Mary's Parish Hosp.*, 220 F.3d 650, 658 (5th Cir. 2000). In Texas, parties are free to contract for recovery of attorneys' fees, and the language of the contract controls rather than the statutory standard. *Peterson Group, Inc. v. PLTQ Lotus Group, L.P.*, 417 S.W.3d 46, 60 (Tex. App. – Houston [1st Dist] 2013, pet. abated). Here, the Loan and Guaranty Agreements provide that PNC may recover reasonable attorneys' fees incurred in collecting on the debt. *See* Pl.'s Mot. Summ. J., App. 38. ("Borrower shall, so far as may be lawful, pay to Lender further amounts sufficient to reimburse Lender for the costs and expense of collection, including, without limitation, reasonable legal fees and expenses."); *id.* at 91 ("Guarantor also agrees to pay to Lender on demand all reasonable costs, expenses and fees (including, without limitation, reasonable attorneys' fees) accrued or incurred by Lender for making collection or enforcement of this

---

[3]Further, even if PNC had made oral representations relinquishing its interest in the loan, the statements would not be actionable under the statute of frauds without a writing or a promise to sign a written agreement. *See Montalvo v. Bank of Am. Corp.*, 2013 WL 870088, at *7 (W.D. Tex. Mar. 7, 2013) ("[I]f a contract falls within the statute of frauds, a party generally 'cannot enforce any subsequent oral *material* modification to the contract.' Texas courts have found that an unenforceable verbal modification does not operate as a waiver." (internal citations omitted)); *Document Imaging, Inc. v. IPRO, Inc.*, 952 F. Supp. 462, 468 (S.D. Tex. 1996) (observing that an estoppel defense only overcomes the statute of frauds if there is an oral promise to sign a prepared written agreement) (citing Southmark Corp. v. Life Investors, Inc., 851 F.2d 763, 760 (5th Cir. 1988)). As Defendants have not produced a writing, PNC is entitled to summary judgment as to these claims.

Guaranty, the Promissory Note or the Mortgage Agreement . . . ."). The Court accordingly awards attorneys' fees to PNC for the prosecution of the Loan.

Because the declaration submitted by PNC is insufficient to support its request for reasonable attorneys' fees,[4] however, the Court orders PNC to resubmit its fee application as a separate motion pursuant to Federal Rule of Procedure 54(d)(2).

## CONCLUSION

For the foregoing reasons, the Court grants PNC summary judgment on its breach of contract claim. With respect to PNC's request for attorneys' fees, the Court orders PNC to resubmit its request as a separate motion within fourteen (14) days of the date of this Order.

Signed April 8, 2014.

_____
David C. Godbey
United States District Judge

---

[4] The Declaration of Steven T. Holmes, which PNC provides in support of its request, lumps the attorneys' hours together and does not specify the work performed. The Court cannot determine whether the hours were reasonably spent litigating the successful claim or were spent on "excessive, redundant, or otherwise unnecessary work." *Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (1983). "Since the agreement was to pay a 'reasonable' attorney's fee, the plaintiff ha[s] the burden of pleading and proving what would be a reasonable attorney's fee for the services rendered to him in collecting the note." *Yandell v. Tarrant State Bank*, 538 S.W.2d 684, 689–90 (Tex. Civ. App. – Fort Worth 1976, writ ref'd n.r.e.). Thus, the Court cannot grant PNC's request for attorneys' fees as it currently stands.